JENNIFER WALKER ELROD, Circuit Judge,
dissenting:
In my view, the majority opinion stretches the Brignoni-Ponce factors too far. Accordingly, I respectfully dissent.
The majority opinion is the first among many legal analyses in this case to rely on the Brignoni-Ponce factors alone. Indeed, both the government and the district court relied on the Brignoni-Ponce factors combined with a confidential informant’s (“Cl”) tip to conclude that Guerrero had reasonable suspicion to stop Garza’s truck.[1] The majority opinion wisely avoids the Cl tip, as it contained no suggestion that Garza had engaged in illegal activity, nor any prediction of Garza’s future behavior.[2] That, however, leaves the majority opinion with nothing but these undisputed facts relevant to the Brignoni-Ponce analysis: an experienced officer observing a purportedly unfamiliar truck carrying plywood near the border, whose driver acted “nervously” when the officer approached.[3] In my view, these facts alone are not enough to demonstrate reasonable suspicion. As we explained in United States v. Rangel-Portillo, conduct that law-abiding individuals are just as likely to engage in carries no weight in the reasonable suspicion analysis. See 586 F.3d 376, 381 (5th Cir.2009). Under the facts of this case, I am hard pressed to imagine a scenario in which a border patrol agent will not have reasonable suspicion to stop an unfamiliar plywood-carrying truck. Because the right to be free from unwarranted police *444 intrusion does not completely dissipate near the border, I respectfully dissent.

.The record demonstrates that the district court was unwilling to conclude that Guerrero had reasonable suspicion based only on the facts relevant to the Brignoni-Ponce analysis. At the hearing on Garza’s motion to suppress, the court explained:
[Guerrero] pulls up. There’s this pickup truck with the plywood in the back at the gas pump and the only articulable facts that the officer could relay that gave him suspicion was, it appeared — [Garza] appeared nervous and quick in removing the gas nozzle and replacing it into the pump and then getting into his vehicle to drive off and that [Garza’s] passenger would not look at [him] which he found suspicious. She' only looked forward. I would say that all of that put together doesn’t raise any reasonable suspicion ....
(emphasis added). Ultimately, the district court concluded:
I think it’s a close call but I’m going to find that the — based on the reliability of [the Cl] and the specific information given that [Guerrero] was within his constitutional rights to detain for investigation [Garza] because of the reasonable suspicion that was created.

. The district court incorrectly concluded that the Cl tip contained some information regarding illegality by Garza. It did not. Cf. United States v. Roch, 5 F.3d 894, 898 (5th Cir.1993) ‘ ("While the information received from the informant in this case may have been derived .from direct contact with [the defendant], - the absence of significant details and a prediction of future behavior prevents us from holding that such information provided a sufficient basis for a reasonable suspicion finding.”).

. Our precedent is inconsistent regarding the impact of allegedly "nervous” behavior. See United States v. Zapata-Ibarra, 223 F.3d 281, 282 (5th Cir.2000) (Wiener, J., dissenting) (collecting cases and explaining that we often accept contradictory facts as justifying reasonable suspicion-, such as "the driver appearing] nervous ... or the driver ... appearing] too cool, calm, and collected” (footnote omitted)).